UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-mj-23 (DLM)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>(1) ALFREDO ALEJANDRO ALJORNA, and<br><br>(2) JULIO CESAR SOSA-CELIS<br><br>Defendants. | **Government's Appeal of and Motion to Revoke Orders of Release on Conditions** |

The United States of America, by its undersigned attorneys, hereby respectfully appeals, and moves the Court to revoke, the Orders of Release on Conditions for the defendants, Alfredo Alejandro Aljorna ("Aljorna") and Julio Cesar Sosa-Celis ("Sosa-Celis") (collectively referred to as "the defendants"), filed in this matter, respectively as ECF 20 and 22.

## PROCEDURAL HISTORY

The government charged the defendants by Complaint on January 16, 2026, with one count of aiding and abetting assault of a federal officer in violation of 18 U.S.C. §§ 2 and 111(a)(1). Doc. 1. The defendants initially appeared in this district on January 16, 2026, and the government moved for detention. On January 21, 2026, a joint preliminary and detention hearing occurred before the Honorable Douglas L. Micko, United States Magistrate Judge. The government called FBI Special Agent Terry Getsch to testify. Although SA Getsch was not the affiant of the Complaint Affidavit, he was involved in the investigation leading to the charge in the Complaint

and interviewed the ERO Officers involved. Magistrate Judge Micko found probable cause to support the charge in the Complaint but ordered the defendants released on a combination of conditions. (ECF 18, 19, 20, 22) Magistrate Judge Micko granted the government's request to stay his Orders for Release until January 22, 2026 at 12:00, pending the government's filing this appeal. (ECF 18, 19)

## STATEMENT OF FACTS[1]

This case stems from the defendants' forcible assault against a Deportation Officer of the United States Immigration and Customs Enforcement ("ICE") during an immigration enforcement operation beginning at approximately 6:00 pm on January 14, 2026.

Deportation Officers (hereafter referred to individually as "ERO #1" and "ERO #2" and collectively as "the officers") were conducting enforcement operations in Minneapolis, Minnesota when they spotted a silver/grey Ford Focus bearing Minnesota license plates. The officers checked the license plate information with ICE databases and learned that the registered owner was not a citizen of the United States and was not lawfully permitted to be in the United States.

The officers drove an unmarked vehicle and initiated a traffic stop by activating the vehicle's emergency lights and siren, but the defendant, later identified as Aljorna, fled at a high rate of speed. A vehicle pursuit ensued. The officers pursued the vehicle for approximately 15 to 20 minutes. The vehicle recklessly zig-zagged through traffic during the pursuit. The vehicular pursuit ended when the vehicle hit

---

[1] The statement of facts are derived primarily from the Affidavit filed in support of the Criminal Complaint.

a light pole near the 600-block of North 24th Avenue in Minneapolis. The officers observed Aljorna get out of the vehicle and run towards an apartment building on the same block.

ERO #1 exited the unmarked vehicle and pursued Aljorna on foot. ERO #2 remained with the unmarked vehicle. ERO #1 commanded Aljorna in English and Spanish to stop running, and ERO #1 identified himself as an ICE officer. As ERO #1 pursued Aljorna, he saw an individual, later identified as Sosa-Celis, standing on the porch of the apartment building. Sosa-Celis yelled to Aljorna in Spanish to run faster. Aljorna slipped and fell to the ground approximately 16 feet from the apartment building's front door. ERO #1 caught up to Aljorna, grabbed him, attempted to detain him, and began tussling with him on the ground.

The following description of events are contained in the Affidavit.[2] During the tussle on the ground, ERO #1 saw Sosa-Celis grab a red-handled broom and began striking ERO #1 with the broom stick while yelling at ERO #1 to let go of Aljorna. ERO #1 felt the broom stick hit him in the face. ERO #1 then saw what he believed was third male approach with a snow shovel who began striking him with the shovel. The area near the apartment building was poorly lit and had sporadic lighting, which made it difficult for ERO #1 to see the assailants.

As the tussle continued, Aljorna wiggled out of his shirt or sweater and freed himself of ERO #1's grasp. As ERO #1 lost his grip, he called out for ERO #2 to assist

---

[2] The government's witness, SA Getsch, was not a witness to the events and was unclear as to when and which defendant possessed a broom and which possessed a shovel during the altercation and assault of ERO #1.

ERO #1. However, ERO #1 realized that ERO #2 was not with him and that he was alone in the dark. ERO #1 feared for his safety.

After Aljorna broke free from ERO #1's grasp, he stood up and looked at ERO #1 with a scowl on his face. Sosa-Celis passed the broom to Aljorna, and Aljorna attempted to hit ERO #1 on the head with the broom stick. ERO #1 was on his back on the ground and shielded his head from Aljorna's blows with the broom stick. At one point, he used his left hand to block a blow, which caused a gash to the palm of his hand. At this point, ERO #1 grabbed his service pistol with his right hand and pointed it in the direction of Aljorna and Sosa-Celis. Aljorna and Sosa-Celis dropped the broom and the shovel and ran towards the apartment building entrance. ERO #1 fired one round towards the vicinity of Aljorna and Sosa-Celis but was not certain if the round struck either of the assailants. Aljorna and Sosa-Celis ran inside the apartment building and closed the front door.

ERO #2 stated he checked Aljorna's vehicle to make sure no one else was inside after ERO #1 began pursuing Aljorna on foot. ERO #2 returned to their unmarked vehicle and drove up to the apartment building and observed ERO #1 engaged in a physical altercation with two male subjects. As ERO #2 exited the unmarked vehicle, he heard a gunshot. He looked toward the apartment building and noticed the male subjects were gone and believed they fled into the apartment building.

Multiple state and federal law enforcement agents and officers responded to the scene. ICE officers eventually entered the residence and deployed tear gas, which forced Aljora and Sosa-Celis to surrender to authorities. Sosa-Celis sustained a non-

life-threatening wound to his upper right thigh, and authorities transported him to the hospital.

The FBI Evidence Response Team arrived, and the team leader observed the front yard of the apartment building. In the front yard, officers located a broom and a snow shovel approximately 20-feet away from the apartment building's front door in a manner strewn about the area. Other law enforcement officers also identified a second broom in the front yard.

Agents with the FBI and Minnesota Bureau of Criminal Apprehension conduced a post-Miranda interview of Sosa-Celis with the assistance of an ICE Officer Spanish interpreter at the hospital. Sosa-Celis stated that he was at the apartment building when he received a call from Aljorna. Aljorna told Sosa-Celis that he thought ICE was trying to stop his vehicle. Sosa-Celis told Aljorna to drive to the apartment building. Sosa-Celis also stated that he saw Aljorna running toward the apartment building and that an ICE officer was on top of him. Sosa-Celis stated that he had a snow shovel in his hands around that time, but he denied using it. He also said he saw Aljorna with a broom in his hand as though Aljorna was trying to, or actually, strike the ICE officer with the broom. Sosa-Celis stated he then physically pulled Aljorna away from the ICE officer through the doorway and locked the door behind them.

FBI agents also conducted two separate post-Miranda interviews with Aljorna at an ICE detention facility with Spanish interpreter. Aljorna stated that he knew the officers were ICE officers before they attempted to stop and that he fled at speeds

of up to 80 miles per hour for 25 to 30 minutes, running stop signs and not obeying traffic lights. He also stated that he was tackled by an ICE officer after he slipped. He described that the ICE officer was on top of him, but that he eventually had the ICE officer underneath him. Aljorna stated that he slipped out of his jacket and ran into the apartment building. Before he ran into the apartment building, he stated that he grabbed a broom that was by the door and threw it in the direction of the ICE officer.

An FBI agent also preliminarily reviewed CCTV video that captured portions of the incident. However, due to the distance, coverage, and panning changes of the camera, only certain portions of the incident were captured. The video captures three individuals in a physical altercation in the immediate vicinity of the apartment building. One individual is initially seen in the front yard with a shovel. A second individual is seen running toward the apartment building. A third individual is seen chasing the second individual. The video footage then shows a physical altercation followed by one individual laying on the ground and the other two individuals running toward the apartment building.

## ARGUMENT

A. <u>Legal Framework</u>

Upon motion of an attorney for the government, a judicial officer must determine whether any condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the

community. *See* 18 U.S.C. § 3142(f). In making such determination, the judicial officer must consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Pretrial detention shall be ordered upon *either* (1) a showing by clear and convincing evidence that release will result in a danger to the community; *or* (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

B. <u>Both Defendants Should Be Detained Pending Trial</u>

Consideration of the § 3142(g) factors demonstrates that the Court should detain both defendants because there is no condition or combination of conditions

that would reasonably assure their appearance at future proceedings or the safety of the community.

1. The Nature and Circumstances of the Offense

Aljorna fled from law enforcement three times: (1) he recklessly fled the attempted traffic stop and led the officers on a high-speed pursuit that lasted at least 15 minutes while zig-zagging through traffic, blowing through stop signs, and disobeying traffic lights; (2) after running into a light pole, he fled on foot and ignored ERO #1's commands to stop running; and (3) after ERO #1 tackled him on the ground, he slipped free from ERO #1's grasp, assaulted the ERO, and ran inside the apartment building. After he slipped free, he struck ERO #1 with the broom stick multiple times and caused bodily injury to ERO #1.

Sosa-Celis assisted Aljorna evade law enforcement by telling Aljorna to drive to the apartment building. He also struck ERO #1 with either the broom stick or snow shovel and handed Aljorna the broom stick after Aljorna slipped free from ERO #1's grasp.

The nature and circumstances of the offense demonstrate Aljorna and Sosa-Celis are a danger to the community because together they assaulted a federal law enforcement officer. Notably, after Aljorna slipped free of ERO #1's grasp, Aljorna did not immediately flee, but instead used a weapon to assault the federal officer. The nature and circumstances of the offense also demonstrate Aljorna and Sosa-Celis are a risk of flight, because Aljorna evaded law enforcement at three different points

during the incident, and Sosa-Celis assisted him in fleeing and fled himself inside the building to attempt to evade the officer after the assault.

   2. History and Characteristics of the Defendants

Aljorna's and Sosa-Celis's immigration status provide strong incentive for them to abscond from future proceedings. The pretrial services report states that both are citizens of Venezuela and subject to immigration detainers and warrants of removal. If they are convicted, they face federal sentencing to be followed by removal from the United States. If they are released, ICE could remove them from the United States. They could also avoid further judicial proceedings and flee the jurisdiction.

Although Magistrate Judge Micko imposed a condition upon Aljorna that he wear a GPS device, the risk remains that Aljorna could remove the device and not appear for future proceedings. This Court recently revoked a defendant's release on conditions in *United States v. Aceves-Lopez*, 25-CR-0387(1) (PJS/DTS), under similar facts. There, the Court noted that the defendant did not have legal status in the United States, would almost certainly be removed from the United States regardless of whether he was convicted, and that GPS device and placement in a halfway house would do "virtually nothing to assure his appearance." *Id.* ECF 104, at 4.

The pretrial services report also states that Sosa-Celis was charged in Hennepin County in April 2025 with giving a peace officer a false name. Although the case is pending, the charge indicates an act to evade law enforcement detection. Moreover, while the pretrial services report recommends release with conditions, the

Bail Reform Act precludes probation from considering several key § 3142(g) factors, such as the nature and circumstances of the offense, and the strength of the evidence.

At bottom, this case involved a dangerous and purposeful assault on a lone federal officer by two defendants who used weapons against the officer and inflicted bodily harm on the officer. Although Sosa-Celis was not the target of the operation, he nonetheless joined in the assault to aid Aljorna. As noted, even after Aljorna slipped free from the ERO's graps, he did not immediately flee, but instead joined Sosa-Celis in assaulting the ERO with a weapon. These facts underscore the § 3142(g) factors and warrant detention. *See Sazenski*, 806 F.2d at 848 (recognizing that either danger to the community or risk of flight is sufficient to authorize detention).

## CONCLUSION

The nature and circumstances of the offense and the history and characteristics of the defendants strongly support detention. There is no condition or combination of conditions that would reasonably assure their appearances at future proceedings or the safety of the community. Accordingly, the government respectfully requests the Court to revoke both defendants' orders of release and order that the defendants be detained for the proceedings in this case.

Dated: January 22, 2026

Respectfully Submitted:

DANIEL N. ROSEN
United States Attorney

s/ *Syngen Kanassatega*

BY: SYNGEN KANASSATEGA
Assistant United States Attorney
District of Minnesota