UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ALFREDO ALEJANDRO ALJORNA,<br><br>　　　　Defendant. | Case No: 26-mj-23 (PM/DLM)<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S APPEAL OF AND MOTION TO REVOKE ORDERS OF RELEASE ON CONDITIONS** |

## INTRODUCTION

The Government's argument that the Court should revoke the order that defendant Alfredo Alejandro Aljorna ("Aljorna") be released on strict conditions rests on two things: the uncorroborated claims of a federal immigration agent who shot an unarmed man and a risk of defendant's non-appearance of the federal government's own making. The Government's arguments are without merit. Aljorna denies he assaulted the federal officer with a broom or otherwise and no independent evidence supports the federal officer's claim to the contrary. Any risk of non-appearance due to an Immigration and Customs Enforcement ("ICE") detainer and removal is solely in the control of the executive branch which can drop the hold and not remove Aljorna.

The Government has not met its burden of establishing that there are no conditions of release that can reasonably assure defendant Aljorna's

appearance at future proceedings or the safety of the community if he is released. The Order Setting Conditions of Release is appropriate and warranted under 18 U.S.C. §3142(b) and (c). The Government's motion to revoke the conditions of release should therefore be denied.

## PROCEDURAL HISTORY

Mr. Aljorna is charged by Complaint with aiding and abetting assault of a federal officer in violation of 18 U.S.C. §§ 2 and 111(a)(1). The charge arises out of a scuffle between Aljorna and an ICE Enforcement Removal Officer (ERO #1) following a traffic stop. The government moved for detention at the initial appearance on January 16, 2026.

Defendant Aljorna appeared for a preliminary and detention hearing before United States Magistrate Judge Douglas L. Micko on January 21, 2026. F.B.I. Special Agent Terry Getsch testified for the government and was subject to cross examination by defense counsel. Following the testimony, Judge Micko found there was probable cause to support the charge in the Complaint.

The Court then turned to the issue of detention. Based on the evidenced adduced at the hearing, including the proffers of defense counsel, and after carefully considering the factors and law under the Bail Reform Act, 18 U.S.C. § 3142, Judge Micko ordered that Mr. Aljorna be released on strict conditions including:

1. Submit to supervision by and report for supervision to the U.S. Probation and Pretrial Services;

2. Travel restricted to Minnesota unless approved by the pretrial services office;

3. The defendant participate in home detention, meaning that he is restricted to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; and

4. That defendant submit to GPS location monitoring technology.

(ECF 20).

The Government now moves that the District Court revoke Judge Micko's carefully considered Order Setting Conditions of Release – an Order imposing conditions of release stricter than those recommended by Pretrial Services – and simply detain Mr. Aljorna pending trial. (ECF 24).

## FACTS

The following factual summary is based upon the Pretrial Services Report and the evidenced produced at the preliminary and detention hearing.[1]

---

[1] As of the writing of this memorandum, a transcript of the testimony at the preliminary and detention hearing has been requested but not yet received. To

### A. *Alfredo Alejandro Aljorna: background and history*

Mr. Aljorna is a Venezuelan national who fled the turmoil and danger in his country and entered the United States, illegally, to find a better life. At the time of his arrest, Mr. Aljorna lived with his wife and 1 ½ year old son in Minneapolis. He supported his family delivering food with Door Dash. He has no criminal convictions his only prior encounters with the criminal justice system being for petty misdemeanor traffic matters. (See Pretrial Services Report p. 2; Case No.s 19AV-VB-25-2251 and 19AV-VB-25-2805). He has no history of bench warrants or failures to appear. He has no known gang ties.

### B. *The nature and circumstances of the offense.*

Mr. Aljorna disputes the government's claim that he assaulted ERO #1, with a broom or otherwise. Recognizing the Magistrate Judge found probable cause, the nature and the circumstances of what happened between Aljorna and EROP # 1 after Aljorna slipped while running away from the officer on foot are sharply in dispute.

While there is no dispute that Aljorna struggled with ERO #1 after he fell, there are two completely different versions of what happened during that struggle. The version on which the government relies in seeking Aljorna's

---

the extent that the factual summary herein differs from the transcript of the testimony adduced at the hearing, the transcript itself controls.

4

detention rests on claims by ERO #1. This ICE officer is the only person to claim that Aljorna assaulted him with a broom.

Mr. Aljorna denies this ever happened. He admits he grabbed a broom after he broke free of ERO #1's grasp and that he threw it but denies ever striking the officer with the broom or anything else. Mr. Aljorna's co-defendant, Mr. Sosa-Celis, does not confirm that Aljorna struck the officer with the broom.

Federal law enforcement officers who investigated the incident interviewed several witnesses. Two adult women were in a residence, shared by the defendants and their families, standing in the front doorway approximately 10 feet from where Aljorna struggled with ERO # 1. They saw the struggle. Neither witness corroborated ERO #1's claims that he was repeatedly struck with a broom or a shovel. The Government did not produce evidence that any witness to the incident supports ERO # 1's claim of being assaulted by Aljorna.

As described at the preliminary and detention hearing, surveillance videos from the City of Minneapolis' Milestone system also do not corroborate ERO #1's claim of being assaulted with a broom and a shovel. While the struggle between Aljorna and ERO #1 10 feet from Aljorna's front door is captured on the surveillance video, the video does not show anyone striking another with a broom, shovel, or any object.

Importantly, the circumstances of the offense include evidence that ERO # 1 used deadly force against both Aljorna and Sosa-Celis while they were running

away from the officer and at a point where they were 10 feet removed from him, not in possession of any weapons, and on the threshold of their home. Sosa-Celis was shot while he was standing at his front doorway with Aljorna right next to him and ERO #1 some distance away, down the front stairs and in the front yard of the home. No physical evidence was found at the scene consistent with Aljorna and Sosa-Celis being near ERO #1 at the time he fired at them as the officer claims.

## ARGUMENT

*The Magistrate Judge correctly concluded that a combination of strict conditions of release, including home detention and being subject to GPS monitoring, will reasonably assure Mr. Aljorna's appearance in court and the safety of any person or the community if the Defendant is released pending trial. The Government's motion to revoke the Order Setting Conditions of Release should therefore be denied.*

Under the Bail Reform Act, the Government may file a motion with the district court to revoke or amend an order for conditional release by a magistrate judge. 18 U.S.C. § 3145(a)(1). Such an order is subject to *de novo* review. *United States v. Maull,* 773 F.2d 1479, 1484 (8th Cir, 1985) (en banc). This does not mean that the district court must "start over in every case, and proceed as if the magistrate's decision and findings d[o] not exist." *United*

*States v. Cook,* 87 F.4th 920, 924 (8th Cir. 2023) (citing *United States v. Koenig,* 912 F.2d 1190, 1193 (9th Cir. 1990)).

The issue before the Court is the same as it was before Magistrate Judge Micko: whether the defendant should be detained or whether conditions should be set for his release. *Maull,* 773 F.2d at 1485. 18 U.S.C. §3142 governs the release or detention of a defendant pending trial. §3142(a) provides in pertinent part as follows:

> Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be–
>
> (1) Released on personal recognizance or upon execution of an unsecured appearance bond, under subsection (b) of this section;
>
> (2) Released on a condition or combination of conditions under subsection (c) of this section; (or)
> …
> (4) Detained under subsection (e) of this section.

18 U.S.C. §3142(a).

The Bail Reform Act directs that the judge must impose the "least restrictive" conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). The structure of this statute clearly favors release over detention. *United States v. Orta,* 760 F.2d 887, 890-91 (8th Cir. 1985).

18 U.S.C. §3142(b) provides that "(t)he judicial officer shall order the pretrial release of the person on personal recognizance, or upon execution of an

7

unsecured appearance bond in an amount specified by the Court,…unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §3142(b).  If the Court determines that an individual is not appropriate to be released on personal recognizance or unsecured appearance bond alone, the next step is not detention but release on conditions under 18 U.S.C. §3142(c).  In making this determination, the District Court should proceed step by step beginning with §3142(b) and, only after determining that release upon personal recognizance or an unsecured appearance bond will not reasonably assure appearance or will endanger the safety of others, should the court then consider conditional release under 18 U.S.C. §3142(c)(2)(A)-(N).  *Maull,* 773 F.2d at 1482. An individual may be detained under 18 U.S.C. §3142(e) only if, after the detention hearing, "the judicial officers finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community…." 18 U.S.C. §3142(e).

"Only if the government shows by clear and convincing evidence that no release condition or set of conditions will reasonably assure the safety of the community and by a preponderance of the evidence that no condition or set of conditions under subsection (c) will reasonably assure the defendant's appearance can a defendant be detained before trial." *United States v.*

8

*Childs*, No. 4:21CR00066 JM, 2021 WL 4557569, at *2 (E.D. Ark. Oct. 5, 2021) (quoting *United States v. Hasan*, 2012 WL 5383099, at *4 (E.D. Ark. Nov. 1, 2012) (quoting *Orta*, 760 F.2d at 891)). A showing that release will result in either danger to the community or a serious risk of flight will warrant detention. *United States v. Abad,* 350 F.3d 793, 797 (8th Cir. 1986).

The United States Supreme Court has observed, as to the danger to the community showing, "[t]he Government must first of all demonstrate probable cause to believe that the charged crime has been committed by the arrestee, but that is not enough. In a full-blown adversary hearing, the Government must convince a neutral decision maker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *United States v. Salerno*, 481 U.S. 739, 750 (1987). To do this, the Government must prove "…by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community." Id. 481 U.S. at 751.

Pretrial detention applies to only a fraction of accused individuals awaiting trial. *Orta*, supra. at 890-92. "The structure of the statute mandates that every form of release be considered before detention may be imposed." Id. As the Eighth Circuit noted in *United States v. Holloway,* 781 F.2d 124 (1986):

> The statute, §3142(a), provides the judicial officer with a broad range of pre-trial release options. These options are to be considered sequentially, in order of severity, and the judicial officer is directed to select the option

9

> which is the least restrictive of the defendant but which will adequately assure his appearance for further judicial proceedings and will also protect the safety of the community. Section 3142(b) provides that the defendant shall be released on his own recognizance or on unsecured bond except when such release will not reasonably assure the safety of the community and the appearance of the defendant. When that is the case, the judicial officer may attach one or more of the conditions listed in §3142(c)....

Id. at 125.

18 U.S.C. §3142(g) sets forth the following factors which should be considered in determining whether to release or detain a defendant pending trial:

> 1) The nature and circumstances of the offense charged including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive or destructive device;
>
> 2) The weight of the evidence against the person;
>
> 3) The history and characteristics of the person, including–
>
>    (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and
>
>    (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law, and
>
> 4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. §3142 (g).

A defendant who may pose some danger to the community or some risk of flight must still be released when conditions of release exist that can reasonably assure both community safety and appearance in court. *Abad,* 350 F.3d at 797; *Orta,* 760 F.2d at 891; see also *United States v. Barrera-Omana,* 638 F.Supp.2d 1108, 1110-1111 (D. Minn. 2009) (finding presumption rebutted and pre-trial detention not warranted in case where defendant charged with possession with intent to distribute approximately 1 kilogram of cocaine). The standard is "reasonable assurance", and a court cannot order detention because safety and appearance cannot be guaranteed. *Orta,* 760 F.2d at 890-892.

The Government argues that Aljorna should be detained as "there is no condition or combination of conditions that would reasonably assure [Aljorna's] appearance at future proceedings or the safety of the community." (ECF 24 at pp. 7-8). A review of the § 3142 (g) factors shows the government cannot meet its burden either to risk of flight or danger to the community.

1. <u>The nature and circumstances of the offense charged.</u>

Defendant Aljorna accepts that the evidence shows he attempted to get away from the ICE officers pursuing him. In one continuing sequence of events, he drove away from the ERO officers in the unmarked vehicle who effected the traffic stop and then, after he lost control of his vehicle and crashed, fled on foot. This single incident of flight does not establish that

11

there are no conditions of release or combination of conditions which will reasonably assure Aljorna's appearance in court as required.

The reasons why an individual would flee from an ICE agent in Minneapolis in the circumstances that existed in this city on January 14, 2026, do not suggest that the same individual would not voluntarily appear in court. Simply put, the fear for personal safety by people of color and immigrants, both documented and undocumented, caused by ICE agents in Minnesota is palpable today as it was on January 14. While this in no way excuses the flight, it is important to consider as part of the circumstances surrounding the offense. Indeed, the evidence is that occupants of the residence that Mr. Aljorna ran into called 9-1-1 because of the conduct of the EROs.

One cannot fairly extrapolate from Aljorna's flight from ERO #1 that there is no combination of conditions of release which would reasonably assure his appearance at future proceedings. The conditions of release set by the Magistrate Judge would both restrict Aljorna's location to his home, except as authorized by pretrial services, and subject Aljorna to both human supervision by pretrial services and constant electronic GPS location monitoring. These conditions are sufficient to reasonably assure Aljorna's appearance, and the Government has not proven otherwise.

The Government's argument that there is no combination of conditions of release which can reasonably assure community safety rests on the uncorroborated claims of ERO #1 that Aljorna assaulted him with a broom. (ECF 24 at pp. 8-9). No other witness to the scuffle, and there were many of them, supports ERO # 1's claims that Aljorna hit him with a broom or any object. Aljorna did not dispute that he held a broom, but he never struck ERO # 1 with it. Upon information and belief, surveillance video recording captures ERO #1 struggling with Aljorna but does not show the defendant or anyone else striking the ICE officer with a broom, a shovel, or any other object.

Viewing the totality of the circumstances based on the information at this stage of the proceedings, it is certainly possible that ERO #1's claims of being assaulted with a broom or shovel are not credible and were in fact made up to create a justification for ERO #1's use of deadly force that did not exist.[2]

---

[2] The United States Supreme Court has held that deadly force may only be used to effectuate a seizure if "it is necessary to prevent the escape [of the suspect] and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officers or others." *Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Further, *Garner* requires police officers to give a warning, if feasible, before using deadly force to stop a fleeing suspect. *Id.* at 11–12, 105 S.Ct. 1694.

2. <u>The weight of the evidence.</u>

While sufficient to establish probable cause, the evidence that the defendant assaulted a law enforcement officer is not strong. As noted, no witness or surveillance video supports ERO #1's claim that Aljorna assaulted him. While ERO #1 suffered a gash on his left hand, the only evidence that this was caused by a broom strike again comes from ERO #1. Defendant Aljorna recognizes that the evidence that he drove away from the ICE agents and thereafter fled on foot is stronger.

3. <u>The defendant's history and characteristics.</u>

Mr. Aljorna has ties to this community. His wife and 1 ½ year-old son resided in Minneapolis at the time of the incident. Aljorna has a history of appearing in court. There is no suggestion he missed any court appearances in connection with his two recent court matters in Dakota County. (See Pretrial Services Report p. 2; Case No.s 19AV-VB-25-2251 and 19AV-VB-25-2805). He has no history of bench warrants. He has no criminal convictions.

The government argues that Aljorna's immigration status provides strong incentive to flee and that he is a risk of flight because he is subject to an immigration detainer and a warrant of removal. (ECF 24 at p. 9). This risk of flight is of the government's own making and does not warrant detention.

On the one hand, the federal government contends that Aljorna should remain in Minnesota to face the charges against him yet on the other hand

the federal government would remove Aljorna from Minnesota if released to ICE custody. The Court has historically not intervened in this conflict between prosecuting and deporting an accused person. As this Court observed in *United States v. Pizana-Reyna,* 09 CR 337 (PAM): "The Government's motion puts the Court in the uncomfortable role of refereeing this dispute between two executive agencies." The Court found that release was appropriate in that case despite an ICE detainer. As this Court further observed: "Taking §§ 3142 (g), 3142(d), and 3146 cumulatively, it is apparent that Congress did not provide courts the authority to detain defendants under § 3142 simply to prevent deportation." Id.

Under the government's reasoning, any criminal defendant subject to an ICE detainer or immigration removal warrant must be detained under § 3142 pending trial. As Judge James Rosenbaum found: "In fine, the government argues that any defendant encumbered by an ICE detainer must be detained pending trial or sentence. This cannot be." *United States v. Barrera-Omana,* 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009).

The government's reliance on Chief Judge Schiltz's Order revoking conditions of release in *United States v. Aceves-Lopez,* 25-CR-0387 (1) (PJS/DTS) (ECF 104) is misplaced. Aceves was charged with conspiracy to distribute 500 grams of more of methamphetamine and subject to a mandatory minimum sentence of 10 years and a maximum of life under 21

U.S.C. § 841(b)(1)(A). He was therefore subject to the presumption that no condition or combination of conditions would reasonably assure his appearance under 18 U.S.C. § 3142(e)(3)(A). There was substantial evidence in that case that Aceves participated in a long running drug-trafficking conspiracy involving very large quantities of methamphetamine. Id.

While Alceves and Aljorna both do not have legal status in the United States, that is the only thing they have in common. This is not a presumptive detention case. Aljorna has a strong incentive to remain in Minnesota. He is a witness to an arguable unreasonable use of force by a federal officer that resulted in his friend being shot right next to him. Given that he was in the line of fire, Aljorna may also be a victim of this unreasonable use of force himself. Remaining in Minnesota to see that justice is done is a powerful incentive not to flee.

4. <u>The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.</u>

The conditions set by Judge Micko will reasonably assure community safety. Mr. Aljorna does not pose any danger to the community at large. To the extent he may pose any arguable danger to an immigration officer, the conditions prohibit any contact. Indeed, Aljorna has every reason not to have any further contact with any law enforcement officer except through the judicial process.

While this case involves an alleged attack on a federal officer, the evidence supporting the allegation is thin. There is no evidence that Mr. Aljorna engaged in any act of violence before in this life and the evidence that he did so here comes from a witness with a powerful motive to create a false narrative to justify why he shot at two unarmed men running away from him at a distance of 10 feet.

## CONCLUSION

The Order Setting Conditions of Release sets forth a combination of conditions that will reasonably assure public safety and the defendant's appearance. The government has not shown by clear and convincing evidence that this combination of conditions will not reasonably assure community safety nor by a preponderance of the evidence that they will not reasonably assure the defendant's future appearance if he is released. The government's motion to revoke the release order and detain Mr. Aljorna pending trial should therefore be denied.

Respectfully submitted,

DATED: January 27, 2026

GOETZ & ECKLAND P.A.

By: *s/Frederick J. Goetz*
FREDERICK J. GOETZ
Attorney Registration No. 185425
Banks Building
615 First Avenue N.E., Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR DEFENDANT